IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **JESSICA HERNANDEZ,** Individually and as Next Friend of **AH,** a minor child, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. **3:16-CV-2432-L** |
| **CITY OF GRAND PRAIRIE TEXAS; C. CANELOS,** Individually and in his official capacity; and **DOE 1,** Individually and in his official capacity, | § § § § § | |
| Defendants. | § § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendants' Motion to Dismiss, filed November 11, 2016. After careful consideration of the motion, and brief, response, reply, pleadings, and applicable law, the court **grants in part** and **denies in part** Defendants' Motion to Dismiss.

## I. Background

Jessica Hernandez ("Hernandez"), individually, and as next friend of AH, a minor child (collectively, "Plaintiffs"), filed this action on August 22, 2016, against the City of Grand Prairie (the "City"), C. Canelos ("Canelos") (collectively, "Defendants"), and Doe 1 ("Doe"). Plaintiffs sued Defendants and Doe pursuant to 42 U.S.C. § 1983 for alleged violations of the Fourth Amendment to the United States Constitution for unreasonable search and seizure, and for the use of excessive force.[1] Plaintiffs also assert state law claims of assault; negligence; intentional

---

[1] Title 42 U.S.C. § 1983 is a federal statute that allows a person to bring a civil action against another person who, acting under color of state law, deprives him or her of a right or privilege secured by the United States Constitution or laws of the United States.

infliction of emotional distress ("IIED"); negligent hiring, training, and retention; gross negligence; and respondent superior. Defendants have filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, and they contend that this entire action should be dismissed.

Defendants contend that Plaintiffs' civil rights claim under section 1983 against the City fails because the allegations of Plaintiffs' Original Complaint ("Complaint") do not allege sufficiently that Plaintiff was injured as a result of an unconstitutional policy or custom of the City; that the City has governmental immunity with respect to the state law claims and that such immunity extends to Canelos individually; that punitive damages are not recoverable against the City; that Plaintiffs' excessive force claim against Canelos fails because the allegations are too conclusory and, therefore, fail to state a claim against Canelos; that Canelos is entitled to qualified immunity on the federal claim asserted by Plaintiffs because he did not violate clearly established law of which a reasonable law enforcement officer would have known.

Plaintiffs counter that the allegations of Plaintiff's Complaint are factually and legally sufficient to withstand a Rule 12(b)(6) motion to dismiss. They urge the court to deny the motion to dismiss.

## II. Rule 12(b)(6) Standard

To defeat a motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008); *Guidry v. American Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007). A claim meets the plausibility test "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). While a complaint need not contain detailed factual allegations, it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555 (citation omitted). The "[f]actual allegations of [a complaint] must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (quotation marks, citations, and footnote omitted). When the allegations of the pleading do not allow the court to infer more than the mere possibility of wrongdoing, they fall short of showing that the pleader is entitled to relief. *Iqbal*, 556 U.S. at 679.

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mutual Auto. Ins. Co.,* 509 F.3d 673, 675 (5th Cir. 2007); *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In ruling on such a motion, the court cannot look beyond the pleadings. *Id.*; *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). The pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). Likewise, "'[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claims.'" *Id.* (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp*., 987 F.2d 429, 431 (7th Cir. 1993)). In this regard, a document that is part of the record but not referred to in a plaintiff's complaint *and* not attached to a motion to dismiss may not be considered by the court in ruling on a 12(b)(6) motion. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 820 & n.9 (5th Cir. 2012)

(citation omitted).  Further, it is well-established and "'clearly proper in deciding a 12(b)(6) motion [that a court may] take judicial notice of matters of public record.'"  *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011)  (quoting *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) (citing *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994)).[2]

The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when it is viewed in the light most favorable to the plaintiff.  *Great Plains Trust Co. v. Morgan Stanley Dean Witter*, 313 F.3d 305, 312 (5th Cir. 2002).  While well-pleaded facts of a complaint are to be accepted as true, legal conclusions are not "entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679 (citation omitted).  Further, a court is not to strain to find inferences favorable to the plaintiff and is not to accept conclusory allegations, unwarranted deductions, or legal conclusions. *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (citations omitted). The court does not evaluate the plaintiff's likelihood of success; instead, it only determines whether the plaintiff has pleaded a legally cognizable claim.  *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004).  Stated another way, when a court deals with a Rule 12(b)(6) motion, its task is to test the sufficiency of the allegations contained in the pleadings to determine whether they are adequate enough to state a claim upon which relief

---

[2] Defendants observe that Plaintiffs have included allegations in their response that are not included in Plaintiff's Complaint or the letter complaint Hernandez made to the Internal Affairs Division ("IAD") of the Grand Prairie Police Department.  "Review of a Rule 12(b)(6) dismissal is, by its very nature, limited to the allegations and theories set forth in the complaint that the district court had before it when granting the motion to dismiss." *Law v. Ocwen Loan Servicing, L.L.C.*, 587 F. App'x 790, 793 n.3 (5th Cir. 2014); *Powell v. Dallas Morning News LP*, 610 F. Supp. 2d 569, 577 (N.D. Tex. 2009) (holding that a court may not consider statements or allegations in a response filed by the plaintiffs). This means that a court is limited to consideration of the pleadings, and matters or theories raised in a response are not part of the pleadings. Accordingly, the court will not consider any statement, whether by Plaintiffs or Defendants, that does not fall within the scope of the pleadings. *Frankly, both sides have injected factual allegations that are outside the pleadings.*

can be granted. *Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977); *Doe v. Hillsboro Indep. Sch. Dist.*, 81 F.3d 1395, 1401 (5th Cir. 1996), *rev'd on other grounds*, 113 F.3d 1412 (5th Cir. 1997) (en banc). Accordingly, denial of a 12(b)(6) motion has no bearing on whether a plaintiff ultimately establishes the necessary proof to prevail on a claim that withstands a 12(b)(6) challenge. *Adams*, 556 F.2d at 293.

## III. Analysis

### A. Plaintiffs' Section 1983 Claim Against the City

#### 1. *The Parties' Contentions*

Defendants, among other things, contend that the allegations of Plaintiffs' Complaint are too conclusory to state a claim for municipal liability against the City for the failure to train, discipline, or supervise its police officers with respect to the use of force. Plaintiffs discuss municipal liability in a general sense, that is, that a municipal may be sued under section 1983, which is really not in dispute; however, Plaintiffs do not address the sufficiency of their pleadings and state that discovery will prove the existence of a policy or custom adopted or ratified by the City in which it failed to train, discipline, and supervise its police officers regarding the use of force when interacting with members of the public. This approach puts the "cart before the horse," as Plaintiffs must first get past the pleadings stage before they argue about what the evidence will show or prove. For the reasons that follow, the court agrees with Defendants that Plaintiffs have failed to state a claim upon which relief can be granted against the City.

#### 2. *Plaintiffs' Allegations Regarding the City*

The court now sets forth the allegations Plaintiffs make regarding their section 1983 claims against the City. Plaintiffs assert as follows:

30.     Defendant City of Grand Prairie, Texas is also liable under 42 U.S.C. § 1983 for failing to supervise and train its police officers and for sanctioning officer misconduct. In addition, Defendant City of Grand Prairie, Texas has a general policy, pattern and/or practice of not disciplining police officers for their conduct, thereby sanctioning the police officers' actions, which amounts to a departmental policy of sanctioning constitutional violations. Defendant City of Grand Prairie, Texas' failure to supervise and train its police officers, and its willful sanctioning of constitutional violations by its employees, constitutes gross negligence and/or deliberate and conscious indifference to peoples' rights including the right to be free from unreasonable search and seizure.

31.     Additionally, municipalities may be held liable under 42 U.S.C. § 1983 for constitutional torts that are committed pursuant to a policy, procedure, practice, or custom of the municipality. Even if Defendant City of Grand Prairie, Texas' practice of sanctioning constitutional torts was not authorized by an officially adopted policy, the practice may be so common and well-settled that it fairly represents official policy. *See Bd. of County Commr's of Bryan County v. Brown,* 520 U.S. 397, 404 (1997).

32.     In this matter, Defendant City of Grand Prairie, Texas' formal and informal actions in sanctioning, overlooking, hiding and/or tacitly encouraging police misconduct by its officers, the IAD Department, the Grand Prairie police chief, as well as its Mayor and City Council reflect a policy, practice custom and procedure authorizing and allowing the use of excessive force that violated the civil rights of Plaintiff Jessica Hernandez. Consequently, Defendant City of Grand Prairie, Texas is liable for the harm caused to Plaintiff Jessica Hernandez as a result of its policies, practices customs and procedures.

33.     Defendant City of Grand Prairie, Texas is liable for the constitutional torts of Defendants C. Canelos and Doe 1 because it sanctioned the following customs, practices, and policies:

    (A)     Using excessive force to carry out an otherwise routine detainment;
    (B)     Using excessive force when such force is not necessary or permitted by law;
    (C)     Ignoring the serious need for training and supervision of its officers in regards to the use of force;
    (D)     Failing to discipline those persons who are found to have engaged in the use of excessive force upon those entrusted to their care and/or under their control;
    (E)     Failing to adequately supervise and/or observe its officers;
    (F)     Failing to adequately train officers regarding the availability of alternative means of detaining persons other than the use of force.
    (G)     Failing to discharge officers who have shown a pattern or practice of using excessive force; and

(H)  Adopting a practice whereby officers who are unfit for peace officer duties, as shown by prior actions in the line of duty, are allowed to retain their positions.

34.  At the time Plaintiff Jessica Hernandez was slammed into the wall, Defendants C. Canelos and Doe 1 were acting pursuant to an official city policy, practice, custom and procedure that sanctions, overlooks and/or authorizes police officers' excessive use of force. *See Monell v. New York City Dept. of Social Servs.,* 436 U.S. 658, 659 (1978).

35.  Thus, Defendant City of Grand Prairie, Texas' policy of sanctioning, overlooking and/or authorizing police brutality was a direct cause of Plaintiff Jessica Hernandez's injuries; in particular, its policy caused Plaintiff Jessica Hernandez to be deprived of her constitutional rights to be free from unlawful seizure and objectively unreasonable force under the Fourth and Fourteenth Amendments to the United States Constitution and constitutes gross negligence and/or deliberate and conscious indifference to the rights, safety, and welfare of others, including Plaintiff Jessica Hernandez.

Pls.' Original Compl. ¶¶ 30-35.

### 3.  *Municipal Liability under 42 U.S.C. § 1983*

A governmental entity can be sued and subjected to monetary damages and injunctive relief under 42 U.S.C. § 1983 only if its official policy or custom causes a person to be deprived of a federally protected right. *Board of the Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 403 (1997); *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). A governmental entity *cannot* be liable for civil rights violations under a theory of respondeat superior or vicarious liability. *Id.*; *see also Baskin v. Parker*, 602 F.2d 1205, 1208 (5th Cir. 1979). Official policy is defined as:

1.  A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the [city] lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or

2.  A persistent, widespread practice of [city] officials or employees which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents [city] policy. Actual or constructive knowledge of such custom must be attributable to

the governing body of the [city] or to an official to whom that body had delegated policy-making authority.

*Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (*en banc*); *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984) (*en banc*). For purposes of a motion to dismiss under Rule 12(b)(6), a plaintiff must plead facts from which the court can reasonably infer that the "challenged policy was promulgated or ratified by the city's policymaker." *Groden v. City of Dallas, Texas*, 826 F.3d 280, 285 (5th Cir. 2016). "[C]ourts should not grant motions to dismiss for [the] fail[ure] to plead the specific identity of the policymaker." *Id.* (citing *Johnson v. City of Shelby, Miss.*, 135 S. Ct. 346 (2014)). The ultimate question in deciding the sufficiency of a complaint is whether a person has alleged facts to show that a policymaker promulgated or ratified an unconstitutional policy that resulted in injury to him or her.

To defeat "a motion to dismiss, a complaint's 'description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts.'" *Balle v. Nueces Cty. Tex.*, ___ F. App'x ___, 2017 WL 2590512, at *4 (5th Cir. June 15, 2017) (quoting *Spiller v. City of Tex. City Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997)). In other words, the pleadings are adequate with respect to a section 1983 claim against a city when they set forth "specific factual allegations that allow a court to reasonably infer that a policy or practice exists and that the alleged policy or practice was the moving force" for the constitutional violation asserted. *Id.* (citation omitted).

### 4.    Discussion

A cursory review of the allegations in Plaintiffs' Complaint readily reveals that the allegations are conclusory. In other words, Plaintiffs make conclusory statements but do not provide even a modicum of facts to support the conclusory statements regarding an

unconstitutional policy or custom. As such, the court cannot reasonably infer that Plaintiffs are entitled to relief beyond the speculative level. By way of example, if Plaintiffs were to assert merely that a person was intoxicated with no supporting allegations, the court would have no basis to reasonably infer that person *was* intoxicated. On the other hand, if Plaintiffs were to assert that the person had bloodshot and glassy or glazed eyes, smelled of an alcoholic beverage, slurred his speech as he talked, staggered or had an unsteady walk, was argumentative or combative, and kept repeating what he said, the court, using some or all of these facts, could reasonably infer, rather than speculate, that this person was intoxicated. Given the paucity of Plaintiffs' allegations regarding the failure of the City to train, discipline, or supervise its police officers regarding the use of force, this court cannot reasonably infer that the City promulgated or ratified a policy or custom to not train, discipline, or supervise its police officers, and that any such alleged policy or custom was the moving force that caused Plaintiffs to suffer a constitutional injury. In other words, under *Twombly* and *Iqbal*, a plaintiff "must plead facts sufficient to show that her claim has substantive plausibility." *Johnson*, 135 S. Ct. at 347. Plaintiffs have not so pleaded. Accordingly, Plaintiffs have failed to state a claim upon which relief can be granted against the City beyond the speculative level.[3]

### B. Excessive Force and Defendant Canelos's Qualified Immunity Defense

#### 1. The Parties' Contentions

As previously stated, Canelos has asserted the affirmative defense of qualified immunity to Plaintiff's section 1983 claims. He contends that the force used was not excessive, and was

---

[3] In reaching this conclusion, the court agrees with Defendants to the extent that Plaintiffs' allegations are too conclusory to support a claim against the City. The court, however, places no merit in the City's argument that Plaintiffs failed to identify a policymaker, as a party is not required to plead the identity of a specific policymaker. *Groden*, 826 F.3d at 285.

objectively reasonable under the circumstances. Plaintiffs contend that Canelos is not entitled to qualified immunity because they have sufficiently pleaded facts for an excessive force claim to overcome or defeat his affirmative defense at the pleadings stage. They contend that the use of force by Canelos was excessive and objectively unreasonable. The court agrees.

2. *Plaintiffs' Allegations Regarding the Use of Excessive Force*

As stated previously, Hernandez believes that Canelos used excessive force during her encounter with him. The court now sets forth the allegations of Plaintiffs' Complaint regarding the use of force by Canelos:

11.     On May 14, 2016 Plaintiff Jessica Hernandez and her minor son [AH] were visiting her parents' home located at 629 S.E. 12th Street in Grand Prairie, Texas. At this time, Plaintiff Jessica Hernandez was 8 months pregnant. The solid front door to her parents' home was open to let in the outside breeze through the screen door, which was secured and unlocked.

12.     As Plaintiff Jessica Hernandez was resting on the couch watching television, Defendants C. Canelos and Doe 1, without knocking, without requesting entry, and without a warrant to enter the house, entered through the screen door into the home demanding to know the whereabouts of documents belonging to Flor Hernandez, Plaintiff Jessica Hernandez's sister-in-law.

13.     In response to the demands of Defendants C. Canelos and Doe 1, Plaintiff Jessica Hernandez got off the couch, intending to escort them to the back yard where her father and her brother, Jesus Hernandez, the husband of Flor Hernandez, were performing repair work on an automobile.

14.     Before Plaintiff Jessica Hernandez could escort Defendants C. Canelos and Doe 1 to the back yard, Defendant C. Canelos began yelling obscenities and racial slurs at Plaintiff Jessica Hernandez and slammed her against a wall of the home by pushing her in her stomach, causing her personal and emotional injuries, including fright, fear, shock, outrage, and humiliation.

15.     The aforedescribed incident was witnessed by Plaintiff [AH], age 5 years, causing him emotional injuries, including severe fright, fear, shock, outrage, and humiliation.

16.     As a result of the aforedescribed incident, Plaintiff Jessica Hernandez made a complaint to the Internal Affairs Division of the Grand Prairie Police Department,

the outcome of which resulted in a finding that "... the evidence tends to support the factual occurrence, as reported by the complainant[.]"

. . .

19.     The Civil Rights Act, codified as 42 U.S.C. § 1983, provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any state or territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any laws, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

20.     Plaintiffs allege that Defendants, jointly and/or severally, deprived Plaintiff Jessica Hernandez of her Fourth Amendment rights, as incorporated and applied to the states through the Fourteenth Amendment.  Defendants violated Plaintiff Jessica Hernandez's rights in the following ways:

(A)     By Defendants C. Canelos and Doe 1 seizing Plaintiff Jessica Hernandez without probable cause in violation of the Fourth Amendment and its reasonableness standard.
(B)     By Defendants C. Canelos and Doe 1 using excessive force in seizing Plaintiff Jessica Hernandez, in violation of the Fourth Amendment and its reasonableness standard.
(C)     By Defendant Doe 1's failure to prevent the deprivation of Plaintiff Jessica Hernandez's constitutional rights, knowing such deprivation was about to occur and which he had the power to prevent[.]
(D)     By Defendant City of Grand Prairie, Texas failing to provide supervision and/or proper training to prevent such incidents of excessive force.

21.     Defendants' violations of Plaintiff Jessica Hernandez's constitutional rights were a direct cause of her injuries, including personal and emotional injuries, including fright, fear, shock, outrage, and humiliation.

. . .

23.     Plaintiffs bring a claim against Defendants C. Canelos and Doe 1, individually as well as in their official capacities, pursuant to 42 U.S.C. § 1983.

24.     At all material times, Defendants C. Canelos and Doe 1 were acting under color of state law as agents and employees of Defendant City of Grand Prairie, Texas.  At all times material, Defendants C. Canelos and Doe 1 were wearing their

official Grand Prairie Police Department uniforms and were acting in the course and scope of their duties as Grand Prairie Police Officers.

25.     Force is excessive, and therefore violates the Fourth Amendment if it is not reasonable in light of the circumstances facing the officer. *See Graham v. Connor,* 490 U.S. 386, 398 (1989). The facts and circumstances of this case show that the actions of Defendants C. Canelos and Doe 1 against Plaintiff Jessica Hernandez were clearly unreasonable.

26.     At the time of the incident, Defendants C. Canelos and Doe 1 had no reason to believe that Plaintiff Jessica Hernandez ·was armed or dangerous. First, Plaintiff Jessica Hernandez made no violent movements towards Defendants C. Canelos and/or Doe 1. Second, Plaintiff Jessica Hernandez made no verbal threats to Defendants C. Canelos and/ or Doe 1. Third, Plaintiff Jessica Hernandez did not touch Defendants C. Canelos and/or Doe 1. Fourth, it was clear to Defendants C. Canelos and Doe 1 that Plaintiff Jessica Hernandez was pregnant, was unarmed and did not have any weapon or dangerous device readily at hand, and was significantly shorter and lighter than Defendants C. Canelos and Doe 1.

27.     Defendants C. Canelos and Doe 1 did not have a reasonable fear of imminent bodily harm when Defendant C. Canelos slammed Plaintiff Jessica Hernandez into the wall, nor did they have a reasonable belief that any other person was in danger of imminent bodily harm from Plaintiff Jessica Hernandez. Moreover, Defendant Doe 1's failure to prevent Defendant C. Canelos from slamming Plaintiff Jessica Hernandez into the wall, knowing such use of force was about to occur and which he had the power to prevent, resulted in a deprivation of Plaintiff Jessica Hernandez's constitutional rights. Consequently, the use of force on Plaintiff Jessica Hernandez was unwarranted under these circumstances and was objectively unreasonable when comparing the amount of force used against the need for the force.

28.     By using subjectively and objectively unreasonable force while acting under color of state law, Defendants C. Canelos and Doe 1 violated Plaintiff Jessica Hernandez's rights under the Fourth and Fourteenth Amendments to the United States Constitution and caused her injuries complained of herein.

Pls.' Original Compl. ¶¶ 11-16, 19-21, and 23-28.

### 3.     *Excessive Force Standard*

A plaintiff's claim for excessive force must be determined according to Fourth Amendment

standards because "*all* claims that law enforcement officers have used excessive force – deadly or

not – in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be

analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Graham v. Connor*, 490 U.S. 386, 395 (1989) (emphasis in original). Determining whether the force used was reasonable "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396 (citation omitted). The issue of reasonableness centers on whether the officer's actions are "objectively reasonable" in light of the facts and circumstances with which he is faced, without regard to the officer's underlying intent or motivation. *Id.* at 397 (citation omitted). Whether the use of force is reasonable "must be judged from the perspective of a reasonable officer on the scene, rather than the 20/20 vision of hindsight." *Id.* at 396. In applying *Graham*, the Fifth Circuit uses a three-part test that requires a plaintiff to show "(1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Cooper v. Brown*, 844 F.3d 517, 522 (5th Cir. 2016) (citation omitted); *Tarver v. City of Edna*, 410 F.3d 745, 751 (5th Cir. 2005) (citation omitted). Injury can be one that is physical or psychological. *Ikerd v Blair*, 101 F. 3d 430, 434 n.9 (5th Cir. 1996).

### 4. *Discussion Regarding Excessive Force*

Defendants contend that the allegations of the Complaint are too conclusory to state a claim of excessive force under the Fourth Amendment. The court disagrees. Considering the allegations of the Complaint and pleadings in the light most favorable to the Plaintiffs, the court is convinced that they have adequately pleaded a Fourth Amendment violation.

The court has closely reviewed the pleadings with respect to the excessive force claim. A review of the allegations of Plaintiffs' Complaint reveals that: Hernandez was visiting her parents'

home in Grand Prairie; she was lying on the couch when Canelos and another police officer entered

through the front door without knocking and without a search warrant; the officers were inquiring

about documents that pertained to her sister-in-law, Flor Martinez; Hernandez had intended to

escort the officers to the back yard where her father and brother (Flor's husband) were reparing an

automobile; before she could escort the officers, Canelos began yelling obscenities and racial slurs

at her and slammed her against a wall by pushing her in the stomach,[4] which caused her personal

and emotional injuries that include fright, fear, humiliation, outrage, and shock; Hernandez was

eight months pregnant; she was significantly smaller in size than both officers; she did not threaten

the officers physically or verbally; she made no violent moves toward the officers; she was not

armed and had no weapons in her possession; and finally, Hernandez did not "defiantly walk[] into

Officer Canelos as he blocked her path" as asserted by Defendants. Defs'. Mot. & Br. to Dismiss

16. Nothing in the pleadings supports this statement.

The court fully understands that "[n]ot every push or shove, even if it may later seem

unnecessary in the peace of a judge's chambers . . . violates the Fourth Amendment." *Graham v.

Connor*, 490 U.S. at 396 (citation omitted). In this case, nothing has been pleaded to indicate that

the officers had a legitimate right to be in the residence or what alleged offense or incident the

officers were investigating; or that Hernandez posed any immediate threat to the officers or a third

person.

---

[4] In her Complaint to the IAD, Hernandez states that Canelos pushed or slammed her twice. As Hernandez stated in her Complaint that she complained to the IAD, and Defendants attached her IAD complaint to their motion to dismiss, it becomes part of the pleadings, as well as the letter from the Chief of Police stating the conclusions of the IAD investigation.

The court has no pause in concluding that Hernandez has sufficiently alleged facts to show that she has suffered some injury that resulted directly and only from the use of force that was clearly excessive, and the excessiveness was clearly unreasonable. *Cooper v. Brown*, 844 F. 3d at 522.

This is not a case in which a person was merely "pushed" or "shoved." Hernandez contends that Canelos "slammed" her twice, and by definition, the verb "slam" necessarily describes force that is much greater than a mere "push" or "shove." At this juncture, there are no allegations to inform the court why any force at all was used against Hernandez.

Defendants argue that Hernandez makes no allegation of any specific injury of Canelos's use of force to detain her and contend that the use of force was minimal. Defendants misapprehend the law on these points. A recent case involving the use of force and qualified immunity, which cites to earlier precedent, *Alexander v. City of Round Rock*, 854 F.3d 298 (5th Cir. 2017), is quite illustrative on this point.

With respect to Lionel Alexander's claim of excessive force, the Fifth Circuit aptly stated as follows:

> Alexander alleges that the officers used excessive force in violation of his Fourth Amendment rights when they "mashed" his face "into the concrete," "pinned him by pressing [a] boot or knee on the back of his neck," and "manipulate[ed] his limbs and put[] pressure on his torso, neck, and head." Alexander further alleges that, as a result, he "sustained injuries to his body as a result of this attack, including injuries to his mouth." He also alleges that he "sustained emotional and psychological injuries as well." The district court found that Alexander did not plead his injuries with enough specificity to overcome the *de minimis* requirement.
>
> We disagree. "[A]lthough a *de minimis* injury is not cognizable, the extent of injury necessary to satisfy the injury requirement is 'directly related to the amount of force that is constitutionally permissible under the circumstances.'" *Brown v. Lynch*, 524 Fed. Appx. 69, 79 (5th Cir. 2013) (quoting *Ikerd v. Blair*, 101 F. 3d 430, 434-35 (5th Cir. 1996)). "*Any* force found to be objectively unreasonable

necessarily exceeds the *de minimis* threshold, and, conversely, objectively reasonable force will result in *de minimis* injuries only." *Id.* (emphasis added) (footnote omitted). Consequently, "only one inquiry is required to determine whether an officer used excessive force in violation of the Fourth Amendment." *Ikerd*, 101 F. 3d at 434 n.9. In short, "as long as a plaintiff has suffered 'some injury,' even relatively insignificant injuries and purely psychological injuries will prove cognizable when resulting from an officer's unreasonably excessive force." *Brown*, 524 Fed. Appx. at 79 (footnotes omitted) (quoting *Ikerd*, 101 F.3d at 434).

On the facts alleged, we conclude that the officers' use of force was objectively unreasonable. Nothing in Alexander's statements or actions indicated that he posed any risk of harm to the officers. Nor did he pose any flight risk—indeed, he stayed in his vehicle and made no attempt to leave while Garza awaited backup. Perhaps Alexander's refusal to exit his vehicle on Garza's command warranted physical removal from the car, but it did not warrant throwing Alexander onto the ground, kneeing him in the back, and pushing his face into the concrete. The officers' use of force once Alexander was safely removed from the vehicle was not objectively reasonable. Consequently, Alexander's alleged injuries—though perhaps not sufficient on their own to satisfy the *de minimis* requirement—are enough to support a claim for excessive force at the motion to dismiss stage.

*Id*. at 309.

While the officers in the *Alexander* case used more force than what Canelos appears to have used, such distinction is quite beside the point. Whether the force used is excessive and objectively unreasonable necessarily depends on the situation the police officer encounters. Here, we have a female who is eight months pregnant, much smaller in size than the officers, and unarmed; and she posed no danger or threat to the officers, or another person. While Hernandez's use of vulgar language during her encounter with the officers is no cause for approbation, the use of such language, by itself, was insufficient for Canelos to slam her twice, *or even once*. Under these circumstances, the court concludes that Hernandez suffered an injury and that the force used by Canelos was clearly excessive and objectively unreasonable. Accordingly, Hernandez has alleged sufficient factual allegations to state a claim for excessive force under the Fourth Amendment.

*5.       Qualified Immunity Standard*

Government officials who perform discretionary functions are entitled to the defense of qualified immunity, which shields them from suit as well as liability for civil damages, if their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  A defendant official must affirmatively plead the defense of qualified immunity.  *Gomez v. Toledo*, 446 U.S. 635, 640 (1980).  Canelos has asserted this defense in his motion to dismiss.

In deciding a dispositive motion that raises the defense of qualified immunity, the Supreme Court initially set forth a mandatory two-part inquiry for determining whether a government official was entitled to qualified immunity.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  Under *Saucier*, a court must determine first whether the facts alleged or shown are sufficient to make out a violation of a constitutional or federal statutory right.  If the record sets forth or establishes no violation, no further inquiry is necessary.  On the other hand, if the plaintiff sufficiently pleads or establishes that a violation could be made out, the court must determine whether the right at issue was clearly established at the time of the government official's alleged misconduct.  *Id.*  The Court relaxed this mandatory sequence in *Pearson v. Callahan*, 555 U.S. 223 (2009), and stated, "[W]hile the sequence set forth [in *Saucier*] is often appropriate, it should no longer be regarded as mandatory," and judges "should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  *Id.* at 236.  The second prong of the test "is better understood as two separate inquiries: whether the allegedly violated constitutional right[] [was] clearly established at the time of the incident; and if so, whether the conduct of the defendant[] [official] was objectively unreasonable in light of that then clearly established law."  *Hanks v.*

*Rogers*, 853 F.3d 738, 744 (5th Cir. 2017) (quoting *Tarver v. City of Edna*, 410 F.3d 745, 750 (5th Cir. 2005) (internal quotation marks and citations omitted)); *see also Evans v. Ball*, 168 F.3d 856, 860 (5th Cir. 1999); *Hare v. City of Corinth,* 135 F.3d 320, 326 (5th Cir. 1998); *Eugene v. Alief Indep. Sch. Dist.*, 65 F.3d 1299, 1305 (5th Cir. 1995).

Ordinarily, one who pleads an affirmative defense must establish his entitlement to such defense.  In the context of qualified immunity, however, this burden varies from the norm.  In this circuit, the rule is as follows:

> Where . . . [a] defendant pleads qualified immunity and shows he is a governmental official whose position involves the exercise of discretion, the plaintiff then has the burden to rebut this defense by establishing that the official's allegedly wrongful conduct violated clearly established law.  We do not require that an official demonstrate that he did not violate clearly established federal rights; our precedent places that burden upon plaintiffs.

*Pierce v. Smith*, 117 F.3d 866, 871-72 (5th Cir. 1997) (internal quotations and citations omitted); *see also Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010).

A right is "clearly established" only when its contours are sufficiently clear that a reasonable public official would have realized or understood that his conduct violated the right in issue, not merely that the conduct was otherwise improper.  *See Anderson v. Creighton,* 483 U.S. 635, 640 (1987); *Foster v. City of Lake Jackson*, 28 F.3d 425, 429 (5th Cir. 1994).  Thus, the right must not only be clearly established in an abstract sense but in a more particularized sense so that it is apparent to the official that his actions [what he is doing] are unlawful in light of pre-existing law.  *Anderson v. Creighton*, 483 U.S. at 640; *Stefanoff v. Hays County*, 154 F.3d 523, 525 (5th Cir. 1998); and *Pierce v. Smith*, 117 F.3d at 871.

In *Anderson*, 483 U.S. at 641, the Court refined the qualified immunity standard and held that the relevant question is whether a reasonable officer or public official *could have believed* that

his conduct was lawful in light of clearly established law and the information possessed by him. If public officials or officers of "reasonable competence could disagree [on whether the conduct is legal], immunity should be recognized." *Malley v. Briggs*, 475 U.S. 335, 341 (1986); *Gibson v. Rich*, 44 F.3d 274, 277 (5th Cir. 1995) (*citing Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994)). Qualified immunity is designed to protect from civil liability "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. at 341. Conversely, an official's conduct is not protected by qualified immunity if, in light of clearly established pre-existing law, it was apparent the conduct, when undertaken, would be a violation of the right at issue. *Foster*, 28 F.3d at 429. To preclude qualified immunity, it is not necessary for a plaintiff to establish that "the [specific] action in question has previously been held unlawful." *Anderson*, 483 U.S. at 640. For an official, however, to surrender qualified immunity, "pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what the defendant is doing violates federal law *in the circumstances.*" *Pierce v. Smith*, 117 F.3d at 882 (emphasis in original and citation omitted); and *Stefanoff v. Hays County*, 154 F.3d at 525. Stated differently, while the law does not require a case directly on point, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. Al-Kidd*, 563 U.S. 731, 741 (2011) (citations omitted).

In analyzing qualified immunity claims, the Supreme Court has "repeatedly told courts … to not define clearly established law at a high level of generality." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (citation omitted). Pursuant to *Mullenix*, courts must consider "whether the violative nature of *particular* conduct is clearly established" and must undertake this inquiry "in light of the specific context of the case, not as a broad general proposition." *Id.* (citations and internal quotations marks omitted).

To defeat or overcome an official's qualified immunity defense, a plaintiff's complaint must allege specific facts that, if proved, would show that the official's conduct violated clearly established constitutional or statutory rights. In cases involving claims of qualified immunity, often it is appropriate to require a plaintiff to file a detailed reply to address the plea of qualified immunity. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995) (en banc). "[T]he reply must be tailored to the assertion of qualified immunity and fairly engage its allegations. A defendant has an incentive to plead his defense with some particularity because it has the practical effect of requiring particularity in the reply." *Id.* A plaintiff generally must be given the opportunity to reply with greater specificity in such cases before the court rules on a defendant's dispositive motion. *Todd v. Hawk*, 72 F.3d 443, 446 (5th Cir. 1996).

A reply, however, is only required when the claims in the complaint are not supported "with sufficient precision and factual specificity to raise a genuine issue as to the illegality of [a] defendant's conduct at the time of the alleged acts." *Schultea*, 47 F.3d at 1434. If "the pleadings on their face show an unreasonable violation of a clearly established constitutional right," the assertion of a qualified immunity defense is insufficient to sustain a Rule 12(b)(6) motion to dismiss. *Shipp v. McMahon*, 234 F.3d 907, 912 (5th Cir. 2000), *overruled in part on other grounds by McClendon v. City of Columbia*, 305 F.3d 314 (5th Cir. 2002) (en banc).

6.      *Discussion Regarding Qualified Immunity*

The court has already concluded that Hernandez stated a claim for excessive force under the Fourth Amendment. Also, from the citations previously cited by the court, the right to be free from the use of excessive force was clearly established on May 14, 2016, the date of the incident made the basis of this action. Further, the court has concluded that, based upon the pleadings, the use of force by Canelos was clearly unreasonable.

**Memorandum Opinion and Order – Page 20**

With respect to the issue of qualified immunity, for the reasons previously stated, a reasonably competent police officer could not have believed, based the pleadings before the court, that slamming Hernandez into the wall was legal or objectively reasonable. Any reasonably competent police officer would have known that the use of such force was objectively unreasonable and a violation of the Fourth Amendment to the United States Constitution. As the pleadings show on their face an unreasonable violation of the constitutional right to be free from the use of excessive force by a police officer, the assertion of a qualified immunity defense is insufficient to sustain a Rule 12(b)(6) motion to dismiss. *Shipp*, 234 F. 3d at 912.

At this stage of course, the court has only heard Plaintiffs' side of the story. After discovery takes place, depending on what evidence is presented to the court, Plaintiffs' claims may not survive summary judgment; however, at the Rule 12(b)(6) dismissal stage, the court is required to accept Plaintiffs' factual allegations as true. *Alexander*, 854 F. 3d at 311.

## B. Plaintiffs' State Claims Against Defendants

Plaintiffs assert several state law claims against Defendants. Specifically, Plaintiffs have asserted state law claims of negligence; negligent hiring, training and retention; gross negligence, and respondent superior against the City. Plaintiffs assert claims of negligence, assault, and IIED against Canelos and Doe 1.

Plaintiffs did not address their state law claims against Defendants in their response to the motion to dismiss. When a plaintiff fails to defend or pursue a claim in response to a motion to dismiss or summary judgment, the claim is deemed abandoned. *See Black v. North Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) (concluding that the plaintiff abandoned her retaliatory abandonment claim when she failed to defend the claim in response to a motion to dismiss) (citation omitted); *Hargrave v. Fibreboard Corp.*, 710 F. 2d 1154, 1164 (5th Cir. 1983) (explaining

that a plaintiff, "in his opposition to a motion for summary judgment cannot abandon an issue and then . . . by drawing on the pleadings resurrect the abandoned issue"). As Plaintiffs did not respond to or address the state law claims, they are deemed abandoned and are no longer before the court. This alone is a sufficient basis to rule against Plaintiffs and in favor of Defendants on all state law claims. As Plaintiffs have abandoned all state law claims, the court will dismiss them with prejudice. Further, since the court is dismissing all state law claims on the grounds of abandonment, it need not address Defendants' governmental immunity arguments.

### C. Punitive Damages Against the City

Defendants contend that punitive damages may not be recovered against the City with respect to the state law claims or federal claim. The court agrees. As the court dismisses all state law claims against both Defendants, they cannot be liable to Plaintiffs for any damages. It is well-settled that punitive damages may not be recovered if there are no actual damages.

With respect to the federal claim against the City, the City contends that it is immune from Plaintiffs' claim for punitive damages. The court agrees. A municipality is immune from an award of punitive damages for actions brought under U.S.C. § 1983. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981).

### D. Defendant Doe 1

Defendants contend that this action should be dismissed as to Defendant DOE 1. The court disagrees. Dismissal of Doe 1 is premature. If Doe 1 is not ultimately identified and served, the court will take such action as necessary regarding the dismissal of Doe 1.

## IV. Amendment of Pleadings

In response to Defendants' Motion to Dismiss, Plaintiffs did not request to amend their pleadings in the event the court determined that they have failed to state a claim upon which relief

can be granted. The provision of Rule 15(a)(2) of the Federal Rules of Civil Procedure that states "[t]he court should freely give leave when justice so requires" is not without limitation. The decision to allow amendment of a party's pleadings is within the sound discretion of the district court. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Norman v. Apache Corp.*, 19 F.3d 1017, 1021 (5th Cir. 1994) (citation omitted). In determining whether to allow an amendment of the pleadings, a court considers the following: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Foman*, 371 U.S. at 182; *Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 566 (5th Cir. 2003) (citation omitted).

Justice requires that Plaintiffs be given an opportunity to replead its claim against the City. Plaintiffs have not previously amended their pleadings. The court ruled that Plaintiffs have not stated a claim upon which relief can be granted with respect to the municipal claim. Since the court ruled that the factual allegations were too conclusory for it to reasonably infer that Plaintiffs were injured because of an unconstitutional policy or custom they will be given an opportunity to address these deficiencies and file an amended pleading.

## V. Conclusion

For the reasons herein stated, the court **grants in part and denies in part** Defendants' Motion to Dismiss. Specifically, the court **grants** the motion regarding Plaintiff's state law claims and **dismisses with prejudice** all state law claims against Defendants, and **grants** the motion regarding Plaintiffs' claims for punitive damages against the City, which are **dismissed with prejudice**. The court **denies** the motion to dismiss with respect to Plaintiffs' section 1983 claim against Canelos and will not entertain any further 12(b)(6) motions to dismiss as to whether

Canelos is entitled to qualified immunity. The court **grants** the motion to dismiss with respect to Plaintiffs' section 1983 claim against the City but **allows** Plaintiffs to amend in accordance with the standard for municipality liability as herein set forth. Plaintiffs shall file an amended pleading that addresses the deficiencies identified by the court, and the amended pleading must be filed by **October 6, 2017**. If Plaintiffs fail to amend as herein directed, this action may be dismissed with prejudice pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted, or dismissed without prejudice pursuant to Federal Rule of Civil Procedure 41(b) for failure to comply with a court order.

The court ordered a stay of discovery on January 20, 2017 (Doc. 13). The order stayed all discovery pending the court's ruling on Canelos's motion to dismiss regarding qualified immunity. As the court has denied the motion and ruled that Canelos is not entitled to qualified immunity, the court hereby **vacates** the stay of discovery order (Doc. 13).

**It is so ordered** this 15th day of September, 2017.

Sam A. Lindsay
United States District Judge